IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DANIEL RAY FAIN and BECKY LYNN SIMPSON, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:26CV406 |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

The plaintiffs, Daniel Ray Fain and Becky Lynn Simpson, had a water leakage in their mobile home. They filed a claim on Fain's homeowner insurance with the defendant, American Bankers Insurance Company of Florida (ABIC). ABIC denied full coverage on the grounds that the damage resulted from a continuous or repeated seepage or leakage of water over a lengthy period, as excluded by the policy terms.

Fain and Simpson now bring a number of state law causes of action related thereto: breach of contract (Count One), breach of duty of good faith and fair dealing (Count Two), violation of the Unfair and Deceptive Trade Practices Act (Count Three), and punitive damages (Count Four). ABIC removed the matter to federal court based on diversity jurisdiction. This matter is before the Court on ABIC's motion to dismiss all of Simpson's claims for failure to state a claim because she was not a named insured on the policy.

Because the terms of the contract defining the "insured" are unambiguous and, as pled, Simpson does not belong to any of them, the Court should grant ABIC's motion and dismiss Simpson's claims against it.

## I. FACTS

Daniel Ray Fain and Becky Lynn Simpson co-owned and lived in a manufactured home located at 227 Pinewood Road, Providence, Caswell County, North Carolina. *See* Compl.

¶ 8. Prior to September 14, 2024, ABIC issued a homeowners' insurance policy for this property, identified as Policy No. HPL0296838, in the name of "Daniel Fain," with a period covering December 1, 2023 to December 1, 2024. *See id.* ¶ 9; *see also* Ex. A, Docket Entry 5-1, at 2. The policy specified that "throughout this policy, 'you' and 'your' refer to the 'named insured' shown in the Declaration and the spouse if a resident of the same household." *See* Ex. A, at 11. The policy further defines "insured" as Fain, his relatives, and anyone under the age of 21 who is in the care of Fain or a relative. *See id.* at 21.

On or about September 14, 2024, a basket strainer located under the kitchen sink in the mobile home failed, causing an abrupt and heavy water leak that caused extensive damage to the property. *See* Compl. ¶ 11. As a result, the property was unsafe, non-functional, and uninhabitable; Fain and Simpson temporarily moved out, thereby incurring additional living expenses. *See id.* ¶ 12.

Fain and Simpson reported the loss to ABIC and took steps to mitigate the property damage, including hiring Roto-Rooter to assist in evaluating and addressing the property damage. *See id.* ¶ 13. On September 16, 2025,[1] ABIC assigned the investigation and adjustment of the plaintiffs' claim to HomeFirst Agency, Inc., an independent adjusting firm. *See* Compl. ¶ 14. The plaintiffs gave HomeFirst evidence of the loss and damages. *See id.* ¶ 15. They further gave ABIC all opportunities to examine the property and losses. *See id.* ¶ 16. They allege that ABIC, through its agents and representatives, purported to investigate and adjust the claim, but then failed or otherwise refused to communicate with the plaintiffs regarding the claim or their investigation. *See id.* ¶ 18.

On October 31, 2024, ABIC sent a letter to Fain regarding the policy and investigation, advising him that the investigation determined the loss was due to "[l]ongterm water damage to dwelling due to leak at sink. This is not a direct physical loss." *See* Ex. C, Docket Entry 5-3, at 2. The letter further provided that "these damages are not covered under the policy you have with our company." *See id.* It specified that "we cover all risks of direct physical loss except: 5. Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from a plumbing, heating or air conditioning system or from a household appliance." *See id.* Eight days prior, a representative of RotoRooter Virginia had emailed ABIC, stating that in his opinion, "it

[1] The year 2025 appears to be a typographical error; the policy only covered the period through December 31, 2024, and the plaintiffs allege later in the complaint communications that post-dated this event but occurred on October 8, 2024. *See* Compl. ¶ 19.

was leaking for less than a week before the homeowner noticed." *See* Ex. B, Docket Entry 5-2, at 2.

On November 1, 2024, ABIC, via HomeFirst, sent Fain a letter enclosing a check for $400.00 for repair/replacement of the plumbing. *See* Ex. E, Docket Entry 5-5, at 2.

The plaintiffs allege that all of the losses to the property are fully insured by the policy, and that ABIC has not commenced any investigation of their claim and has refused or otherwise to investigate and adjust the claim. *See* Compl. ¶¶ 23–24. Specifically, the plaintiffs allege that ABIC set out to collect the minimum facts necessary to support either a denial or delay in payment of the claim and has not contacted or credited individuals with knowledge to the claim. *See id.* ¶ 26. In sum, the plaintiffs allege that ABIC has denied, delayed, and/or refused to pay the claim without any reasonable grounds for doing so in spite of the terms of the policy. *See id.* ¶ 27.

ABIC now moves to dismiss all claims asserted by Simpson, arguing that because she was not listed as one of the insureds on the policy, nor does she otherwise qualify under its terms, she was not party to that contract between Fain and ABIC. *See* Def. Mot. in Support, Docket Entry 8, at 1-2. Fain and Simpson opposed the motion, and ABIC has replied. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).

A plaintiff is not required to prove its case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

On a motion to dismiss, courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other

'unwarranted inferences, unreasonable conclusions, or arguments.'" *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Generally, conclusory allegations based *solely* 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Capital LLC*, 615 F. Supp. 3d 379, 384 (M.D.N.C. 2022) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009) (unpublished) and citing other cases).

> A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

*Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)).

"Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting a motion to dismiss into a motion for summary judgment." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019), *appeal voluntarily dismissed*, (internal and other citations omitted).

## III. DISCUSSION

Fain and Simpson allege that ABIC breached its contractual duty to provide coverage within the terms of the policy. The claim focuses on an alleged failure to investigate and refusal to pay without reasonable grounds therefor. ABIC does not seek dismissal of any claims that Fain alleges at this stage of the proceedings.

It is a "well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986), *cited in Martin v. Nautilus Ins. Co.*, 629 F. Supp. 3d 333, 337 (M.D.N.C. 2022). To state a claim for breach of contract, a plaintiff must allege (1) "a valid contract existed between the parties," (2) the "defendant breached the terms thereof," (3) "the facts constituting the breach," and (4) resulting damages. *Williams v. Williams*, 746 S.E.2d 319, 319 (N.C. Ct. App. 2013).

Accordingly, the Court must determine as a threshold matter whether Simpson is a party to the contract, under the terms of the policy. And North Carolina law governs here. *See Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000); N.C. Gen. Stat. § 58-3-1. Pursuant to this, "the 'interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction.'" *See Harrelson v. USAA Gen. Indem. Co.*, No. 1:18-CV-862, 2019 WL 6351256, at *3 (M.D.N.C. Nov. 27, 2019) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000) and citing *Allstate Ins. Co. v. Chatterton*, 518 S.E.2d 814, 816 (N.C. Ct. App. 1999)).

If the insurance policy is "ambiguous and reasonably susceptible to more than one interpretation," the court construes the policy in favor of the individual seeking the coverage. *See N.C. Farm Bureau Mut. Ins. Co.*, 530 S.E.2d at 95. This is because "the insurer prepares the policy and chooses the language[.]" *See Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 502 S.E.2d 626, 628 (N.C. Ct. App. 1998). "The parties may not invite ambiguity merely by claiming that the policy language is unclear; rather, [n]on-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning. Where the policy defines a term, then that definition is to be applied, even if a more colloquial meaning is normally used." *Harrelson*, 2019 WL 6351256, at *3 (cleaned up) (alterations in original).

The policy identifies Fain as the insured and defines any additional insured persons as Fain's spouse if a resident of the same household, his relatives, and anyone under the age of 21 under Fain's care or that of a relative. *See* Docket Entry 5-1, at 21. ABIC argues that because the plaintiffs have not alleged that Simpson falls into any of these categories, she is not a party to the contract and all claims arising therefrom fail. *See generally* Def. Br. in Support of Mot. to Dismiss, Docket Entry 8. *See also Wilson v. Wilson*, 468 S.E.2d 495, 497 (N.C. Ct. App. 1996) (stating that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C.G.S. § 75-1.1"); *Matternes v. City of Winston-Salem*, 209 S.E.2d 481, 487 (N.C. 1974) (noting that under North Carolina law, "[t]he general rule is that one who is not a party to a contract may not maintain an action for its breach.") (alteration in original).

The plaintiffs argue that because the terms "spouse" and "relative" are not otherwise defined, that renders the policy ambiguous. *See* Pltf. Opp. Br., Docket Entry 11, at 4. And because North Carolina law requires ambiguous policies to be construed in

favor of the insured, this Court should infer from the allegations that Simpson jointly owned the residence, resided there, and was displaced as a result of the water damage, "Ms. Simpson . . . could qualify as either the 'spouse' or a 'relative' of Mr. Fain, the named insured." *See id.*

As a threshold matter, despite the plaintiffs' argument to the contrary, the fact that the policy language does not specifically define the terms "spouse" and "relative" does not render its terms ambiguous. "The parties may not invite ambiguity merely by claiming that the policy language is unclear; rather, '[n]on-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning.'" *See Harrelson*, 2019 WL 6351256, at *3 (quoting and citing *N.C. Farm Bureau Mut. Ins. Co.*, 530 S.E.2d at 95).

These are non-technical terms. Black's Law Dictionary defines the term "spouse" as "[o]ne's husband or wife by lawful marriage; a married person." SPOUSE, BLACK'S LAW DICTIONARY (12th ed. 2024). *See also* SPOUSE, Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/spouse (defining the term as "a partner in a marriage"). Likewise, a "relative" is defined as "[a] person connected with another by blood or affinity; a person who is kin with another." RELATIVE, BLACK'S LAW DICTIONARY (12th ed. 2024). Merriam-Webster defines the term as "a person connected with another by blood or marriage." *See also* RELATIVE, Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/relative. *See also Fidelity & Cas. Co. of N.Y. v. Jackson*, 297 F.2d 230, 233 (4th Cir. 1961) (finding "the meaning of 'relative' [in automobile liability policy] is amply delimited . . . by the restrictive phrase 'of the same household' and by the plan of the policy, and so the word lies beyond the need for judicial interpretation").

Here are the ways in which the Complaint pleads Simpson's connection to Fain, the named insured, the property, and the Policy:

- "Plaintiffs have owned and resided in a manufactured home, located at 227 Pinewood Road, Providence, Caswell County, North Carolina 27315," *see* Compl. ¶ 8;

- "Defendant issued a homeowners' policy to Plaintiffs[,]" *see id.* ¶ 9; and

- "Plaintiffs were insured under the Policy[,]" *see id.* ¶ 10.

The Complaint does assert, in conclusory fashion, that ABIC issued the Policy to the "Plaintiffs" and that "Plaintiffs" were insured under the policy. *See id.* ¶¶ 9—10. But it also appends the policy which, again, identifies only Fain as the insured.

And "[c]onclusory allegations and allegations that are simply a formulaic recitation of the elements are not entitled to the assumption of truth." *See Harrelson*, 2019 WL 6351256, at *3 (internal quotation and citations omitted). And the remainder of the Complaint specifically does *not* allege that:

- Simpson is Fain's husband or wife by lawful marriage;
- Simpson is Fain's partner in marriage;
- Simpson is connected to Fain by blood or affinity;
- Simpson is connected with Fain by blood or marriage;
- Simpson is under 21 years old and under Fain's care; or
- Simpson is under 21 years old and under a relative of Fain's care.

The plaintiffs invite the Court to speculate on the nature of Simpson's relationship to Fain based on the allegation that they co-own the property and reside there together. But there are a number of potential relationships that could so operate. The policy does not define "you" and "yours" as "roommate" or "fellow property owner." As pled, Simpson is not a party to the contract between ABIC and Fain.

"Under North Carolina law, '[t]he general rule is that one who is not a party to a contract may not maintain an action for its breach.'" *Martin v. Nautilus Ins. Co.*, 2024 WL 3361129, at *4 (M.D.N.C. July 10, 2024) (quoting *Matternes v. City of Winston-Salem*, 209 S.E.2d 481, 487 (N.C. 1974)). That being said, "a person may bring an action to enforce a contract to which he is not a party, if he demonstrates that the contracting parties intended primarily and directly to benefit him or the class of persons to which he belongs." *See DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 801 (N.C. Ct. App. 2001). "The most significant factor as to the rights of a third-party beneficiary is that both contracting parties intended that a third party should receive a benefit that might be enforced in the courts. It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary." *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 637 (W.D.N.C. 2006) (citation omitted). "The intent of the parties is ascertained by construction of the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *See Dement*, 544 S.E.2d at 801 (internal quotations and citations omitted).

Simpson argues that her claims survive in the alternative, based upon this theory. *See* Pltf. Opp. Br., Docket Entry 11, at 14. But the Complaint does not allege (as found earlier here) that she was a party to the contract, nor does it allege that ABIC and Fain intended for her to be a third-party beneficiary. And neither the

Complaint nor the plaintiffs' briefing provides any other insight regarding "the apparent purpose that the parties [we]re trying to accomplish," *see DeMent*, 544 S.E.2d at 801, in executing the policy agreement. Arguing in conclusory fashion in their opposition brief that the "allegations that [Simpson] is an intended beneficiary of the insurance contract therefore establish[es] the privity necessary to maintain a breach of contract action," *see* Pltf. Opp. Br., Docket Entry 11, at 15, will not suffice.

Finally, the plaintiffs argue that Simpson's claims survive because she has an insurable interest in the property the policy covers. *See* Pltf. Opp. Br., Docket Entry 11, at 15. In support thereof, the plaintiffs quote from a North Carolina Supreme Court case from 1963 that simply addresses whether the plaintiff had a valid property interest such that he could obtain a policy insuring it. *See King v. Nat'l Union Fire Ins. Co.*, 128 S.E.2d 849, 852 (N.C. 1963). Whether Simpson had an insurable interest in the property such that she *could* have been named in the policy or sought her own is not the issue before the Court. The plaintiffs' suggestion that *King* provides Simpson, as a non-party to an insurance policy, with an enforceable right regarding the same, is careless at best and disingenuous at worst.

Accordingly, Simpson's breach of contract fails as a matter of law. So, too, do her claims of breach of the covenant of good faith and fair dealing (Count Two) and unfair or deceptive trade practices (Count Three). *See, e.g., Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 256–57 (N.C. Ct. App. 2018) (holding that when a claim for breach of the covenant of good faith and fair dealing is based upon the same acts as a claim for breach of contract, the invalidity of the breach of contract claim is likewise fatal to the breach of good faith and fair dealing claim); *Riders v. Hodges*, 804 S.E.2d 242, 249 (N.C. Ct. App. 2017) (finding that the unfair and deceptive trade practices claim fails). And because the Court cannot award punitive damages untethered to an underlying claim, Count Four fails, as well.

## IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** ABIC's motion to dismiss Simpson's claims **WITHOUT PREJUDICE**.

JoAnna Gibson McFadden
United States Magistrate Judge

October 6, 2026